IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Varujan L. Piccard,

                Plaintiff,

                              Case No. 1:21-cv-558-MLB

v.

Neil P. Deedy,

                Defendant.

_____/

**OPINION & ORDER**

    Defendant asks the Court to enforce a purported settlement agreement Plaintiff never signed, arguing that the parties nonetheless reached a meeting of the minds. (Dkt. 165.) Plaintiff says the parties were still negotiating the agreement and did not reach a resolution. (Dkt. 166.) The Court finds that the parties did not enter a binding settlement agreement and declines Defendant's invitation to create one out of thin air.

    Plaintiff filed this trademark infringement and fraud lawsuit pro se in February 2021. (Dkt. 1.) Plaintiff claimed, in part, that Defendant falsely registered a book he had hired Defendant to print and falsely

obtained an International Standard Book Number (ISBN) for the book. (*Id.* at 1.) The Court ultimately dismissed Plaintiff's claims in their entirety. (Dkts. 76, 162.) After dismissal, the parties engaged in settlement negotiations. (*See generally* Dkt. 165-2.)

On March 24, 2022, Plaintiff emailed Defendant's lawyer saying, if Defendant provided him a sworn statement that Defendant would not again falsely register Plaintiff's book, Plaintiff would not appeal the Court's order of dismissal. (Dkt. 165-2 at 7.) He ended his email by telling the lawyer to provide him with an "official document" by the end of the week. (*Id.*) The next day, the lawyer responded, saying Defendant would agree not to reissue the ISBN provided Plaintiff released all claims he had brought or could have brought in the lawsuit, agreed not to pursue an appeal of the Court's dismissal orders, and agreed not to refile his lawsuit. (*Id.* at 6.) This, of course, added terms to Plaintiff's original offer not to appeal. Plaintiff responded that he was very busy so "[l]et[']s reach an agreement by end of next week." (*Id.*)

On March 28, Defendant's attorney sent Plaintiff a proposed settlement agreement by which Defendant agreed not to use "the Premier ISBN or associate it with any book, including [Plaintiff's book]" in

2

exchange for Plaintiff's releasing his claims.  (Dkt. 165-2 at 13–18.) Plaintiff sent the draft agreement back with changes, noting "I've reviewed and edited your proposal further." (*Id.* at 19.)  Specifically, Plaintiff required "reimbursement of [his litigation] expenses." (*Id.*)  He also noted the agreement "may be revised further." (*Id.*)

On March 31, Defendant's lawyer spoke with Plaintiff on the phone. (Dkt. 165-2 at 3–4.)  During that conversation, Defendant's counsel told Plaintiff that Defendant "had no obligation to pay Plaintiff's purported litigation expenses and, in fact, as the prevailing party, was entitled to a bill of costs." (Dkt. 165-1 at 5.)  In response, Plaintiff asked that the agreement reflect that neither party would seek costs and that Defendant would not use his book. (*Id.*)  About a week later, Plaintiff threatened to file another lawsuit or an appeal if Defendant did not execute Plaintiff's version of the agreement.  (Dkt. 165-2 at 30–31.)

In response, Defendant's counsel sent Plaintiff an email telling him it was Defendant's "position that the parties reached a settlement on the terms set forth in the March 28 correspondence[.]" (Dkt. 165-2 at 42.) She attached a revised agreement including a provision that Defendant would not "print, publish, display, or otherwise use [Plaintiff's book]" and

3

that "[n]either party shall file a bill of costs or seek litigation expenses related to" this lawsuit. (Dkt. 165-2 at 4–5, 42–48.) Plaintiff did not sign the final proposed agreement.

Defendant says "the parties have reached a meeting of the minds and, thus, have reached a settlement agreement" because they agreed on all essential terms. (Dkt. 165-1 at 7.) Plaintiff responds that "there was never an agreement between the parties" and that he understood the correspondence with Defendant's counsel "to infer that an agreement was being negotiated and ongoing." (Dkt. 166 at 1.) Plaintiff is right.

To enforce a settlement agreement, "'a party must show that the documents, affidavits, depositions and other evidence in the record reveal no evidence sufficient to create a jury issue on at least one essential element of the [nonmoving party's] case.'" *Tillman v. Mejabi*, 771 S.E.2d 110, 111 (Ga. Ct. App. 2015) (citation omitted). And like on summary judgment, the evidence is viewed "'in a light most favorable to the nonmoving party.'" *Id.* (citation omitted). "Whether a settlement is an enforceable agreement is a question of contract law for the trial court[.]" *Capital Materials, Inc. v. Kellogg & Kimsey, Inc.*, 530 S.E.2d 488, 490 (Ga. Ct. App. 2000).

Under Georgia law, "settlement agreements must meet the same requirements of formation and enforceability as other contracts." *Hansen v. Doan*, 740 S.E.2d 338, 341 (Ga. Ct. App. 2013). An agreement is formed only when there is a meeting of the minds. *See Ruskin v. AAF-McQuay, Inc.*, 643 S.E.2d 333, 336 (Ga. Ct. App. 2007). Courts will not enforce a settlement agreement if "it appears that the parties clearly failed to reach agreement on an essential contract term." *Id.* at 337.

Defendant is correct that generally "[a]ssent to the terms of a contract may be given other than by signatures." *Ga. Lottery Corp. v. Patel*, 826 S.E.2d 385, 388 (Ga. Ct. App. 2019). But the Court cannot say there is no evidence from which a jury could find that the parties failed to assent to all the material terms of the purported agreement. During the parties' March 25 correspondence, Plaintiff offered not to file an appeal of the Court's dismissal orders so long as Defendant agreed not to use his book pending an official agreement. When Defendant's counsel told him he would need to sign a settlement agreement, Plaintiff told her that the parties would reach an agreement the next week. It is clear that Plaintiff did not—and could not—assent to terms in a future settlement agreement that had not even been drafted.

Not only that, the first draft agreement sent by Defendant's counsel did not include Plaintiff's express condition and included a full release of all Plaintiff's claims—not merely an abdication of his appellate rights. And after the March 28 correspondence, the parties continued negotiating, including over Plaintiff's litigation costs. This begs the question of why Defendant continued to engage in discussions and revisions if he thought the parties had already reached an agreement. And while Plaintiff said during the parties' March 31 phone conversation that he would agree to a provision by which neither party would seek costs, he then sent a proposed agreement that required Defendant to pay his costs. This alone shows the parties never reached agreement on that term. There is no binding agreement. *See Ligon v. Hu*, 870 S.E.2d 802, 803–804 (Ga. Ct. App. 2022) (parties did not reach binding settlement agreement where defendant did not deliver to plaintiff release that fully complied with terms of plaintiff's settlement offer).

Defendant essentially asks the Court to force Plaintiff into an agreement to which he never assented. The Court will not do so.

The Court **DENIES** Defendant's Motion to Enforce Settlement (Dkt. 165.)

6

**SO ORDERED** this 6th day of January, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE